who are here. I hope it's not too much of a change in your plans to come to Oxford rather than to New Orleans. It's not the present city, but it's got its own special joys. We have four arguments this morning. We'll hear two probably and then take a break, but we'll see how that goes. The first case of the day is United States v. Kinzy. The first case of the day is United States v. Kinzy, 22-30169. Ms. Kuhn. Thank you, Your Honor. Good morning and may it please the Court. My name is Samantha Kuhn and I represent Christopher Kinzy in this appeal. There's two errors that we've raised in this appeal related to the calculation of the sentencing guidelines that applied to Mr. Kinzy at sentencing, and I'd like to start by first focusing on the crime of violence issue. How about starting with harmless error? Sure, Your Honor. With respect to harmless error, the government points to a single line at the very end of the sentencing proceeding after the court had attempted to adjourn and began to release the parties, and the prosecutor, after having previously notified the court in filings about the possibility of considering an alternate guideline range, the government or the prosecutor asked the court whether he had considered them, and it was clear that the sentencing judge had not considered them. He asked for post-trial briefing or post-sentencing briefing, and then he even asked the prosecutor to reiterate what he was asking for. This court has repeatedly held that a single statement like... Well, you left out what he said after that. Right. Sorry. The sentencing judge at the end said that, to answer your question, I would have imposed the same sentence under either scenario. Now, this court has repeatedly held in multiple cases that a statement like that, standing alone, is not sufficient to show harmless error. Cite a case for that. Tanksley, Martinez-Romero, Davalos, Cobian, Cardenas. No, cite a case and a cite to the case, including the year. Our court has said exactly that. In Tanksley, and I apologize, I confine the year for the rebuttal argument, but in Tanksley, this court said that a statement that the court would have imposed the same sentence standing alone is not sufficient to show harmless error under the government's heavy burden to prove that the court would have imposed the exact same sentence and considered the alternative guidelines range when it crafted the sentence that it imposed. Didn't he say more than what you've... I'm saying you're obfuscating, but didn't he say a little bit more than that, that under the At the end of the sentencing, the court said that that was the sentence that he believed was appropriate, and that considering his criminal history, and I believe he cited one other consideration, that he would have imposed the same sentence under either scenario. This court has made very explicit, though, that that is not enough, because the court also, the judge had to have made explicit that he actually considered the alternative range that he was referring to, or that would have applied absent the error, and that he crafted this sentence in consideration of that range, and there's nothing in the record to show that he actually considered that range. Ms. Kuhn, let me ask you, you stated as a matter of fact that the judge indicated he had not considered the alternative range. I have a transcript in front of me here. I would say it's ambiguous. I'm not sure what to make of the judge saying, will you submit to the AUSA, he says, will you submit this in writing, I'm not sure what this is, and submit this in post-sentencing brief. The AUSA had also talked about we had not yet filed a motion for the third point of acceptance of responsibility, which I saw was filed the same day as the sentencing. What do you say we should rely on to show that he had not, the judge had not considered this already? Because there was no articulation, no discussion of the actual guidelines that would apply without the crime of violence enhancement during the sentencing, and even though prior to sentencing there were objections filed, it was discussed, which I think is one of the main points raised by the government, that has not been deemed sufficient. In fact, in Sanchez-Arvizu, this court said that even though there had been briefing on an alternative range that could apply, that's not enough to show actual consideration of the alternative range, and this court has said... Sorry, that case may be very important, right? Correct. I was going to ask you, is there any circuit where the court, the district court, was told the correct range, and here it was an objection to the PSR, right, then a sentencing manner, then orally. They were told the range, and then they say something like regardless or under any scenario, and it's not deemed harmless? Correct. In Sanchez-Arvizu, it was briefed in the prior filings for sentencing and everything like that, and the court said, look, that doesn't show the judge actually considered this alternative range. In fact, it was very... I would say that's probably the most analogous to this series of events. That's in your brief? Yes. Because that sounds to me like the Third Circuit's rule, that if you're going to insulate any sentencing guidelines error, then you've got to... The district court's got to say, well, had I applied the correct range, and I know what it is, here's how I would get up to where I am, and that's kind of the point, I think, is that in order to show sufficient evidence that the court actually considered the alternative range and decided on that sentence, it's almost as if it has to be two independent sentencing sentences. But that does sound to me like Ibarra-Luna. Correct. But Guzman-Rendon, I'm sure you're familiar with it, pretty explicitly says we have two different ways to assess harmlessness, and in a case where the guidelines 41 to 51, the correct version, is three times presented to the district court, and then the district court says, under either scenario, sure sounds like he's thinking of that correct scenario, but I'll still give 87 months. And I think the key here, though, is that the court has to show that the judge actually evaluated why you imposed the variance. That makes sense to me logically, and I see that as the Third Circuit's, but how do you distinguish Guzman-Rendon? I would say that in order to show, and again, with cases like Tanksley and the other... I'm just going to press you on that. How do you distinguish Guzman-Rendon? I do not recall the exact real fact scenario in Guzman-Rendon. So the last quick question then. So your argument is that you have to actually explain how you get higher than the correct range. Your argument isn't, therefore, well, this was too abbreviated a comment, one just on its own, or the timing of it, that the government prompts him at the very, very end, after a sentence was already imposed. The argument is the first, not the second. The third evidence has to clearly convince this court that the judge actually considered, in crafting his sentence, the correct or alternative guidelines range. Not that just that the judge said, well, now that I'm thinking about it, sure, this is the sentence that I would give no matter what. Because those are two different aspects. Even under that first path, I know that the two paths that were kind of laid out, I think they're described in Taylor. It seems like those are all two paths within the Ibarra-Luna framework. It's a little hard for us to say, as a court of review, he didn't consider something where he specifically said, under that scenario, I would still give 87. He doesn't explain how he gets up there. He doesn't go through the 35-53. But it's really hard to say he didn't consider it. He said he did. Well, he didn't explicitly say that he considered the alternative range of 41 to 51 months. He does say under either scenario. But at no point during that sentencing hearing had anybody discussed the alternative ranges. And again, looking at this record, when he specifically imposed an 87-month sentence, which is the midpoint of the incorrect range, and this court has said that can be evidence that it was tied to the range, it was influenced by the range at the very least, which would make it not sufficient evidence. But he imposes an 87-month sentence, rejects a downward variance request, and specifically says the sentence will be within the guidelines range. And this court has said that that is tied to it. Now, under Ibarra-Luna, and as this court has recognized, even with statements like I would have imposed the same sentence under either scenario, there has to be evidence that this sentence is not derivative of the recommended guidelines range that was applied. It's not influenced by. And here, there's simply no record evidence that this 87-month sentence, 7.25 years, would have been selected or was selected after due consideration. I mean, when under Ibarra-Luna, my difficulty is we seem to have really channeled out a separate approach. And of course, I'll ask the government this. It seems to almost disadvantage defendants that, like here, specifically draw to the district court's attention the correct range, because then they're stuck with the less favorable formula. Had no one focused on the correct range, then Ibarra-Luna would apply, and I think on this record, you'd win. The trouble is, FBD was really assiduous, and three times they told Judge Guidry what the right thing was. And then he says, I have a scenario. Well, and under Tanksley and these other cases which succeeded Ibarra-Luna, I do believe in Tanksley, this exact or similar scenario happened where the court said, I would have imposed the same sentence no matter what. But the court said there is no record evidence that the court explicitly did consider the alternative range before making that statement. And so I think looking at those cases, it's clear that the court has said that it has to be firm, concise, and without equivocation. And in this case, all we have is a judge who expressed some confusion about what the government is even asking for after he's pronounced sentence. There's no discussion. Most of these cases involve extensive discussion in the imposition of the sentence, that even if it's tied to the guidelines, the court goes into great length about why that specific sentence is appropriate. I don't know how the judge could have been more firm and concise, and I don't agree with you that he's confused. I think perhaps the way it was put to him, he didn't understand exactly what they were talking about. But once it clarifies what they wanted, he gave some reasons. But maybe you ought to move on to your next point. I do think, and just one more point, I do think it is notable in the statement of reasons that there is no indication of a basis for a variance or specific sentencing factors that went into the court's determination of the appropriate sentence. That was issued after the sentencing had concluded, obviously, and so looking at that, I think that is additional evidence and undercuts the position that the district court judge actually considered a 41- to 51-month guideline range and decided that a three-year upward variance was necessary. You keep beating this horse to death after I suggested maybe you want to stop hitting it, but he had been doing that the whole sentencing hearing, talking about various sentencing aspects. Does he have to go back and just repeat himself all over again? The previous parts of the transcript, and I apologize, Your Honor, I don't mean to keep reiterating, I just wanted to point out the statement of reasons, but the previous parts of the sentencing proceeding were just ruling on the objection, the discussion of the actual objections. He overruled the defense's objections to them and then moved on, addressed the downward variance. And adopted the pre-sentence investigation report. Correct, and then stated that he was noting the objection or noting the request for a downward variance and denying it and imposing a guideline sentence. That's the entirety of the court's explanation for the sentencing at that point in time. So just, I guess, briefly moving on to the actual, the substance of the two errors. This court, there's two equally straightforward paths to reversal and equally straightforward errors here. One of them, of course, is Borden and Garner. Under Garner, that dictates that this, Mr. Kinsey's prior offense cannot categorically qualify under the Force Clause due to the allowance and the only having a need for reckless intent. But this court doesn't even need to reach the application of Borner and Garner to this case because the Shepard documents did not show or meet the government's burden of showing that the statute's divisible and that Mr. Kinsey was convicted under a specific subsection. This court has said that when you look at Shepard... Well, didn't the indictment almost exactly express, I think it's subpart C of the statute we're talking about? It did not, Your Honor. The language that the government focuses in on is the phrase use or threats of violence or threatening violence. And he said, I'm going to kill you. I'm sorry, Your Honor. I'm talking about the prior condition for resisting an officer. That relates to the second issue. The resisting officer predicate offense that they treated as a crime of violence, for that one, the charging document just referred to use or threats of violence, which is fundamental to the entirety of the statute. And the government doesn't point to any phrase in there that actually isolates a specific subsection and a specific version of the crime, which is what is necessary. This court has explained that in order for a Shepard document to show a divisible offense and show a specific subsection was the conviction, it has to identify language that is basically unique to that version and to the exclusion of others. And that's not what we have here. And so the court doesn't even need to get into the Borden and Garner analysis because by the government's own concession, if there's no specific subsection that he was convicted under, then even pre-Borden, the statute is broader than the Forest Clause and it can't qualify. Now, if the court does reach the Borden and Garner issue, I think it's important to look at the fact that LZ, the Supreme Court case from Louisiana, has made explicit what the general intent requirement to find that under Borden Louisiana crimes that require only general intent allow for reckless-based offenses. And so this court, I know that there's been a lot of citations to various state cases and various applications, but as the Supreme Court made clear in Taylor, the reasonable probability analysis of a state offense being applied in a certain way, it's not to say that anyone needs to prove that it's always or even usually applied in a certain manner. The point is to show that it may be applied to broader conduct. And here, we don't need to look further. But if we were to look further, cases like Brock, Williams, and Bradley are all cases where these uses of force, of physical interactions, struggles, where there's no direct and no conscious object of the action are sufficient to show resisting an officer by force or violence. And so it's clearly broader than the Forest Clause under any analysis, but certainly mandated by Garner. And I see I'm about out of time, so if I have any more questions. Thank you, Counsel. Thank you. May it please the Court. Kyle Daly for the government. I'd like to start with harmlessness, if it pleases the Court. This Court in Bonilla, and more recently in Richardson, held that the District Court considered the correct guideline range and stated explicitly on the record that it would have imposed the same sentence regardless, then any error is harmless. Now, Bonilla is important because... Well, so that word, regardless, is all that's necessary in the government's view? If at the very end of sentencing, you just say, Your Honor, could you just say regardless and you've insulated any error? Is that the government's view? No, the term regardless is not... No, but either scenario is only one extra word. Can a judge just at the end, facing very difficult sentencing guidelines, insulate the whole kit and caboodle from our review by just saying, You know, regardless of who's right, I give 87 months. Is that the government's position? If the discussion that is directly before that comment is all about the guidelines range, then yes. If it's clear from the record that what the... Okay, so the government is saying that the District Court has to itself discuss the range. No, that's not what I'm saying. I'm saying if the District Court says... That's Ibarra-Luna, right? Ibarra-Luna, in the case that Kinsey relies upon, they're conflating the two paths of harmlessness. In Ibarra-Luna, there's no direct statement by the court that I would have imposed the same sentence regardless of whether... I'm not asking about an obligation to say I would impose because that does reduce just to a regardlessness statement, a meaningless little, You can't review me, Fifth Circuit. I would say, why isn't it true that the district judge, if they're wrong in their guidelines, has to explain how, given the right range, they get to the higher sentence? Because in order for it to be harmless, it has to be clear in the record that they consider that guideline range. But under Bonilla, all that's required is that that range be in the documents that the court reviews its sentencing. So in Bonilla, it was just in the PSR objections. Here it was in Kinsey's sentencing memo, which... As far as we know, he made no analysis of the correct range. It was just presented to him, but he never talks about it. Well, no, because he mentions that he reviewed the sentencing memo twice. But he disagreed with it. Yes, he found that the higher range applied, but he acknowledged that he had reviewed the sentencing memo. Let's assume you lose on crime of violence. So this man is not an armed career criminal. And that happens a lot. It's very difficult for us to assess in court COVs. That's a big swing in prison time. And a judge who thinks he is an armed career criminal and sentences based on that doesn't have to say, well, if I were wrong about that, here are the 3553 factors that mean I would give him this monster sentence anyway. Don't have to say that. That's not what Bonilla requires, and Bonilla is still good law, as far as I'm aware. That range has got to be within the documents that the court reviews, and then he has to make the explicit statement. Can I get a little bit more on this transcript? It's been referred to a little bit earlier in the questions to your friend on the other side. The judge seemed confused when the AUSA was asking about the alternative guideline, and the judge says, can you submit a brief on that? What do you make of the effect of that on our analysis? It does indicate a lack, at least as of that moment. Judge Barksdale suggested he just needed to get a little more focused on what the AUSA was asking. Maybe that's the answer. But doesn't that suggest a lack of consideration of this alternative? I think what that suggests is that the district court didn't understand why the government was asking about it. But I don't think it indicates that the district court didn't consider it. But even if this court finds that it didn't, it can consider it during the sentencing hearing, and that's what the court did. I have not seen any case law, and the defense cites none, where this court or any appellate court casts doubt on a district court statement because it's in response to a party's inquiry. That's what district court lawyers are supposed to be doing. They're supposed to be trying to get as full a record as possible. Right, but the government rule here is punishing the defendant who actually does give a full record. Do you see why? You've just said it all depends on whether they present the argument. If so, the court can just say insulate. So in other words, Mr. Kinsey would have prevailed in front of us had his lawyers not been alert and not told Judge Guidry about the crime of violence. See what I mean? I do see what you mean, Judge Higginson. Of course, if that range had not been in Kinsey's sentencing memo, it might have been in the government's sentencing memo. So it can be brought, or it could have been in the PSR. Well, speak about the reality. They objected to the PSR. That's where it comes in. Then they file a memo. That's where it comes in. Then they argue it. Three times the defense presented it to Judge Guidry. Had the defense not presented it under your logic, we wouldn't. He would win. So he's losing because his lawyers were good. So long as the government doesn't, in their own sentencing memo, then bring up the correct guideline range. No, we didn't. We didn't have any reason to. He's losing because his lawyers were good under your theory. I understand where you're coming from, Judge Higginson. I wouldn't put it that way because any party, the government or the defense or the probation officer can put that range into the documents and have it reviewed by the court. If Kinsey's sentencing memo hadn't had that in there, then the government may have just brought it up. But it was in the record, so there was no reason for the government to pound on it or repeat it over and over again. So we don't see it as punishing. The district court is asked to articulate an answer to a question by a party. And the district court's an independent body. There's no reason to believe that it's being bullied by the AUSA to say what it thinks the AUSA wants to hear. So we can rely upon the district court's statement in that moment that it had considered the guideline range or that it had considered the memos and that under either scenario, I would have imposed the same sentence. And that explained it. In the case you presented to us in which it happened in this chronological order, I mean, if this transcript didn't have that last page to it or whatever length of time it is, when the AUSA raised, would you do this regardless to use Judge Higginson's word? So if that weren't in there, it seems to me that Armistair is a much tougher argument. What of the fact that it comes so late, that the sentence has already been pronounced? He says, is there anything else? The district judge says that. And then we get this. I mean, the sentence is done. Does that affect any case that you have that had it in that chronological order? No. So in the cases that I reviewed and I looked for this, I didn't see any of the opinions make an issue of, you know. Well, were those the facts of those cases, not just make an issue of it? Oh, well, in most of the opinions I've reviewed, we don't know exactly when in the sentencing hearing that statement was made. But I certainly haven't seen any cases that cast doubt on a statement like that just because it came at the end of the hearing. Well, that's good advocacy. But what I'm really asking is, does any case have that fact pattern? And you're saying you didn't see any. And that's the best I can say. I don't know every case in this district, but I did look. I did research it pretty thoroughly, and I did not see anything like that. That's the most honest answer I can give. I'm sorry. Thanks, guys. So if I could turn to the crime of violence issue. So we don't know if this was an upward departure or a variance, do we? We have no idea how it got up to 87. Well, the government asked in its sentencing memo that if the lower guideline range was applicable, if that's what the court found, that it vary upwards. But, no, the district court didn't say that because the district court had found that the higher range applied. Counsel mentioned a case I don't remember, Sanchez-Artezu. Do you recall that case? Because apparently there was no showing of actual consideration, and therefore we didn't apply harmlessness. That one was not on the top of my mind, and I was kind of looking it up as counsel was arguing. I didn't see, though. I could have missed it, but I didn't see an explicit statement by the district court that it would have imposed the same sentence, and I didn't see in that opinion, and I didn't see in that opinion the correct guideline range within the documents the court referred to. Obviously, guidelines are very complex, and so we see a lot of them. It is the government's position, and I guess it's a compound question, would you say other circuits agree that as long as a sentencing judge at the very end of sentencing just says, you know, regardless, whatever's been presented to me, this is what I do, at that point any sentence is reviewed for harmless error? That's how simple it is? So long as that other guideline range that the appellate court determines to be the correct one is reviewed by the district court. Somewhere in the record. Somewhere in the record, I think you can limit it to the sentencing record, but yes, somewhere in the documents that we know that the court reviewed. So here we know the court reviewed those memos because it said that it had at the sentencing hearing. So moving to whether or not Kinsey was actually convicted under Subsection 4 of Louisiana's Felony Resisting Statute. According to this court's decisions in Sanchez and in Torres, a charging document that closely tracks a particular subsection can establish a conviction under that subsection. And Kinsey relies on what he calls the legal certainty standard that's not mentioned in Sanchez or Torres, but regardless, it's legally certain that Kinsey was convicted under Subsection 4. Kinsey's indictment charged him with resisting the officer with, quote, the use of violence or threats of violence. So Kinsey could not have been charged with all four subsections because the term threat is not in the preamble or in Section 3. Now, while the term threatening appears in Subsections 1, 2, and 4, Kinsey's indictment lacks any language from Subsections 1 and 2 regarding the timing of the resistance. While Sanchez and Torres did involve longer subsections, and so there was more language that was unique to that subsection, Subsection 4 of Louisiana's statute is relatively short, so a prosecutor who's intending to charge under that subsection isn't necessarily confined to that language. The indictment did not include those terms. So just to be clear, the only Shepard document is the indictment? That's true, yes. And the language corresponds pretty generically to the whole statute. You'd say no? I would say that the term threats brings it out of the preamble because the term threats is not in the preamble. But that's in at least two other subsections. That's in two other subsections. So our argument is that it closely tracks because in the first two subsections there's a lot of additional language about the timing of the resistance. What's your closest case that that can sort of give us, I think the standard is certainty. Yes. Torres is the closest that we get, but we just haven't seen a case involving a subsection that's this short. So it's not directly on point, but that's the closest that we get. So because Kinsey's indictment closely tracks subsection 4, the court should find that he was convicted under that subsection. Even with Borden and the recklessness standard here? So, yes. Yes, it should. What we're asking with whether or not it's actually a crime of violence is a couple of things. One is that this court not read Garner the way that Kinsey is urging this court to read Garner. Because if this court reads the latter portion of the Garner opinion to invalidate every Louisiana general intent crime as a crime of violence, then it's tantamount to a finding that in Louisiana law there's negligent armed robbery and negligent aggravated rape and negligent carjacking. Because most of those Louisiana statutes are general intent crimes. So we're just asking that the court do what it's always done, and it did this in Garner and in Young, and look to the plain language of the Louisiana statute and how the Louisiana courts apply that statute. And in Garner, this court had already found that that exact statute, though it had been slightly amended, was not a crime of violence because it was able to point to Louisiana cases saying this crime can be committed negligently. And we don't have that here. The cases that Kinsey has been able to cite that seem to involve lower uses of force, in those cases the sufficiency of the evidence is not before the court. So we just do not have many details in those cases about... There's generic terms like the defendant ran into the officer or there was a struggle. But because there's no argument in front of the court about that issue, about sufficiency of the evidence, about sufficiency of the resistance, so it's just not a very reliable record to conclude that that would be sufficient to violate subsection 4. In addition, most of these cases don't parse out the subsections, so if the court had been presented with that argument, it might have found that it was sufficient under subsections 1 or 2 or 3. Does Louisiana have pattern criminal jury instructions? It does. And what's the standard for this statute? So it's a general intent crime, and so they... Recklessness would suffice. Sorry? Recklessness would suffice. We disagree that recklessness would suffice because of the term toward the officer. He has to use it toward the officer. So there is... We acknowledge that this court has found that some Louisiana crimes that are general intent crimes can require recklessness or only recklessness. But what we're asking the court to do is to first look at the operative terms of the statute because those terms, such as using force toward, may require more than recklessness or negligence. I'm sure that's how this case is a classic example of why Booker perhaps held as it did that the guidelines are advisory only in the sense of all of this debate about recklessness and intentional and et cetera, et cetera, and what the guideline range would be in the light of Booker. That's why district judges probably ought to be very careful about ensuring that they're stating alternative positions. That's what's called a softball play. Yes, Your Honor. Here, the defendant's conduct was particularly violent. He had six prior felony convictions. And so while the advisory guidelines range are certainly something the district court could consider, there was more than just that before the district court to craft a proper sentence. And especially when you have a district court specifically saying, I would have imposed the same sentence regardless, we think that in here is harmless. If there are not any other questions, we'd ask that you affirm Kinsey's sentence. Thank you. All right, counsel. I'd just like to briefly address a couple points made by opposing counsel and then return to a couple cases about the harmlessness issue. First, with respect to the Shepard documents, I do think it's worth noting that as the government has put forward their theory of why the statute's divisible and why this is a conviction under four relies on this toward an officer phrase. That phrase is found nowhere in the charging document or any of the Shepard documents, the plea colloquy transcript or the judgment. And so I think that alone is fatal to the government's position because they're saying that's the unique element that somehow makes this uniquely satisfy the force clause. Secondly... Just for the record, for our recording, state what the prior crime that's being reviewed, state what the indictment says, which seems to track the statute. The indictment specifically says, Mr. Kinsey violated Louisiana Revised Statute 14-108.2 in that he did resist a police officer, officers named, with the use of violence or threats of violence knowing that said officer was acting in his official capacity. And the second point that I'd like to address from the government's argument is dealing with the recklessness and the whole standard, the general intent crime standard. The point of the general intent crime standard and the division that the Supreme Court laid out in ELSI, the Louisiana Supreme Court, is it's a difference between objective and subjective conduct or requirements. And so the court made clear that when we're looking at an objective reasonable person standard, that's what we're talking about with general intent, what somebody might reasonably expect to come from their volitional act, their physical act. And so that's exactly what Borden was addressing in finding that reckless offenses don't satisfy the force clause, because that is meant to direct or be targeted toward offenders who necessarily committed offenses that are directed at, targeted at a specific person with their use of force, and that that's the conscious object of their actions. And then the third thing I wanted to address as far as the government's position, that because there were not sufficiency analyses done in certain cases that we cited, it doesn't seem like the government disputes that the mere struggle aspect doesn't rise to the level of or show intent necessary for the force clause. But the standard for determining whether a state offense is broader than the federal force clause is just reasonable probability. And so if people are allowed and permitted to plead guilty in court to an offense based on this type of minimal conduct without any evidence of subjective awareness or intent regarding their conduct, then that is sufficient. There doesn't need to be an affirmance in the face of a sufficiency challenge. That's good. And there was a question, opposing counsel, about patent jury instructions on this statute. It seems to be the argument, I'd have some force to it, if the fact of patent jury instruction for charging this offense made some sort of intent differentiation on the fourth subpart. Are you at all aware of what the patent jury instructions do on this? I reviewed them before oral argument. I do believe there's no delineation of intent. I think the entire crime is general intent crime, from what I remember viewing. I did view, in the 28J, we submitted on the recent Bradley case in Louisiana. I did look back, because on the district court or the trial court website, a lot of the materials are available there. And the instruction there provided, I believe they provided each of the four alternatives to the jury, without any requirement that they come down with a specific response. I'm happy to provide those documents. I just reviewed them when I found the case, out of curiosity, frankly. But I'm happy to provide them to the court afterward, if the court would like to see those. So on harmlessness, you probably have a few points to make, and especially that I'm thinking there's going to be a lot of weight on the Sanchez-Artezu case for me. That's not an Ibarra-Luna case, correct? That is a case where the district judge's attention was drawn, in one way or another, to the correct range. Yes, Your Honor. It's a Fifth Circuit case from 2018. It's actually Sanchez-Artezu, A-R-B-I-Z-U. And the citation is 893 F 3rd 312. So it's published. I'm sorry? It's published. Yes. And that case is one where, similar to here, the parties or the defense had provided an alternative guidelines calculation. I think both the probation officer and defense had lower ranges than what was applied, and provided both of those to the court. And the court denied a variance, said it wasn't inclined to grant a variance to what turned out to be the correct range. And the court still said that, it says, of the amended range offered by defense counsel and the probation officer as optional downward departure, and not as the framework for sentencing to anchor its decision. The record is therefore silent with regard to how the court would have sentenced him, had it considered the correct guidelines range. And so I think that is the most analogous to this fact pattern, and to the reliance on the presentation of alternative ranges in filings. Thank you, Your Honors. All right, Counsel. Thanks to both for helping us understand this case.